UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 11-67-GWU


GREGORY COMBS,                                                                PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.


## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities?  If not, a
        finding of non-disability is made and the claim is denied.

3.     The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

2

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Gregory Combs, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic low back pain secondary to degenerative disc disease of the lumbar spine, a small non-stenosing disc protrusion at L4-5, and chronic neck pain secondary to degenerative disc disease of the cervical spine.  (Tr. 11).  Nevertheless, the ALJ determined that Mr. Combs retained the residual functional capacity to perform a full range of "light" level exertion and proceeded to apply Rules 202.21 and 201.28 of the Commissioner's

Medical-Vocational Guidelines (the "grids") applicable to an individual of the plaintiff's age of 39, high school education, and lack of transferable work experience, which mandate a conclusion of "not disabled."  (Tr. 14-17).  The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Combs alleged disability beginning November 20, 2007 due to pain in his neck, back, shoulder, hip, right arm and hand, and legs.  (Tr. 148).  He testified to having several injuries, including from a rock fall in a coal mine, and motor vehicle accidents.  (Tr. 24, 26-27).  Some of the accidents predated his alleged onset date by a wide margin, with his back trouble having started after a car wreck in 1999.  (Tr. 28).  He testified to being able to do few activities and mostly sat on the couch.  (Tr. 32-33).  He testified to being depressed and unable to concentrate, but had not seen any mental health professional.  (Tr. 35).

The medical evidence contains records reflecting examinations and prescriptions, but no treating or examining source provided functional restrictions or indicated that Mr. Combs was disabled.

Dr. John W. Gilbert, a neurosurgeon, treated Mr. Combs in 2004 and 2005, well before his onset date, for complaints of neck and back pain, but his neurological examination was normal and his neck and lower back had normal

ranges of motion.  (Tr. 240).  Straight leg raising was positive on both sides, and while Dr. Gilbert planned to obtain MRI reports, since an old MRI showed a disc protrusion at L5 and S1 (Tr. 254), they were apparently not obtained.  In April, 2005, Dr. Gilbert found that Mr. Combs was fit for duty with no restrictions.  (Tr. 242).  After suffering a right clavicle fracture in a motorcycle accident in June, 2005, an associate of Dr. Gilbert's gave refills on medications but did not indicate any restrictions.  (Tr. 208, 210, 243).

Mr. Combs was treated by family physicians at the office of Dr. Melecio Abordo, Jr., from November, 2007 to October, 2008.  Dr. Abordo and his associate, Dr. Jesus Agomaa, provided narcotic pain medication but listed few findings on their examinations other than cervical spine tenderness and a spasm of the paraspinal muscles.  (Tr. 298, 302, 366, 369, 378, 381, 384).  In February, 2008, a urine drug screen was negative for opiates (Tr. 322), but the plaintiff asserted that he had run out of medication a few days before testing (Tr. 368).  In August, 2008, it was noted that he had called one week after his last office visit claiming that his Lortab had been stolen, but no refill was given until the next visit.  (Tr. 380).  No restrictions are given.

Dr. John F. Gilbert, a family doctor, not to be confused with Dr. Gilbert the neurosurgeon, examined the plaintiff in May and June, 2009 for the same complaints of neck and low back pain.  (Tr. 392).  He noted that Mr. Combs did not

appear to be in distress during his examination, but did sigh frequently during the examination.  There was no limitation on flexion and hyperextension of his neck. He did indicate a minimal limitation on rotation but Dr. Gilbert thought that the effort exerted also appeared minimal.  Otherwise, there was only a finding of minimal pain on straight leg raising.  Dr. Gilbert scheduled MRIs of the lumbosacral and cervical spines and right shoulder.  Mr. Combs declined his offer of non-narcotic pain medications.  On follow-up, Mr. Combs complained of worsened pain in his neck and was holding his head tilted to one side and holding it up with his hand.  Dr. Gilbert ordered an MRI and suggested a follow-up with a pain clinic, adding that he would not be prescribing any more pain medications.  (Tr. 391).

State agency reviewing physicians provided the only physical functional capacity assessments in the record.  They both agreed that the plaintiff could do a full range of "medium" level exertion (Tr. 326-32, 356-62), while the ALJ gave the plaintiff the benefit of the doubt and restricted him to "light" exertion (Tr. 14).  The plaintiff does not challenge this finding on appeal.

The plaintiff does argue that it was improper to apply the grids when the plaintiff had both a physical and psychological impairment, citing notations in Dr. John W. Gilbert's reports in 2005 of diagnoses of anxiety and depression.  (E.g., Tr.

242).  Dr. Gilbert had prescribed the medications Klonopin and Elavil.[1]  However, these office notes predated the alleged onset date by at least two years.  In addition to being of no direct relevance to the period after the November, 2007 onset date, they contain no indications of functional restrictions, and the mere diagnosis of a condition says nothing about its severity.  Young v. Secretary of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990).  As previously noted, Dr. Gilbert had released his patient back to work with no restrictions in April, 2005, strongly suggesting that anxiety and depression would not have produced any functional limitations even at the time.

Moreover, Drs. Abordo and Agomaa did not include anxiety or depression among their diagnoses, and although they prescribed the medication Amitriptyline, a generic form of Elavil, it was specified to be for assistance in sleep and chronic pain (e.g., Tr. 293), not depression or anxiety.  Moreover, a state agency psychological reviewer, Dr. Lea Perritt, reviewed much of the evidence and concluded that Mr. Combs had no medically determinable psychiatric impairment.  (Tr. 341).  Accordingly, the court concludes that the ALJ correctly found that depression and anxiety were not "severe" impairments, and that there was no error

[1]Klonopin is a benzodiazepine anti-anxiety medication, while Elavil (amitriptyline) is a tricyclic antidepressant which, because of its significant sedative action, may be useful in depression associated with anxiety and sleep disturbances.  5 Robert K. Ausman & Dean E. Snyder, Medical Library (Lawyers Edition), §§ 8:48; 8:105 (1990).

in applying the grid rules to carry the Commissioner's burden of showing that there

were jobs in the economy which the plaintiff can perform.

The decision will be affirmed.

This the 17th day of November, 2011.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**